935 F.2d 279
 21 U.S.P.Q.2d 1462
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Russell SYMMES and Glenn Howard, Appellants,
v.
Michael J. KING, Appellee.
 No. 90-1412.
 United States Court of Appeals, Federal Circuit.
 May 3, 1991.
 
 Before MICHEL, LOURIE and CLEVENGER, Circuit Judges.
 DECISION
 LOURIE, Circuit Judge.
 
 
 1
 Russell Symmes and Glenn Howard appeal the April 4, 1990, decision of the Board of Patent Appeals and Interferences, Patent Interference No. 101,813, awarding priority of invention to Michael J. King. We reverse.
 
 OPINION
 
 2
 In the early 1980's, appellants performed research and development in the tire retreading field. They sought to avoid use of the inner tube and rim assembly of the prior art and reduce the curing time of tires. In May 1983, appellants conceived a retread curing ring apparatus to secure a metal ring to a tire sidewall. A tire subjected to this procedure could then be heated under pressure and retreaded.
 
 
 3
 On April 1, 1985, appellants filed a patent application which issued as U.S. Patent 4,579,619 on April 1, 1986. On June 2, 1986, appellee filed a patent application on the same invention. Appellee then filed an amendment copying the claims of the '619 patent for the purpose of provoking an interference; the examiner declared the interference and accorded appellee the benefit of a February 13, 1984 priority date, based on a previous application. Appellee was thus senior party because of his earlier priority date. Claim 1 of the '619 patent was set as the count of the interference and read as follows:
 
 
 4
 A retreading curing ring apparatus for mounting on a tire retreading assembly, such tire retreading assembly including a tire carcass defining a retread area and integral sidewalls having inner circular beads adjacent their free ends, a performed tread strip positioned on said tread area and a flexible envelope surrounding such tread strip and said sidewalls and extending downwardly toward said circular bead, the retreading curing ring apparatus being positionable adjacent one of said sidewalls for securing such envelope to such tire for curing, said curing ring apparatus including a circular body member for receiving a portion of the envelope and the circular tire bead, guide means adjacent said circular body member for concentric aligning said tire carcass relative to said circular body member, and a plurality of clamps mounted at circumferentially spaced locations on said body member, each of said clamps including a clamping arm movable between an open and a closed position, whereby when said clamping arm is in the closed position it holds said body member, the tire sidewall and the envelope in an engaged position.
 
 
 5
 The Board concluded that work by a co-worker of appellant in successfully vacuum testing a sealed curing ring and envelope in May 1983 constituted conception of the invention. However, it also found that these tests did not meet all the limitations of the count because the apparatus tested did not include a performed tread strip. It also found that the tests failed to demonstrate that the invention would work in its practical contemplated use.
 
 
 6
 The Board concluded that appellants did not reduce the invention to practice until later testing in September 1984. It also found that appellants were not diligent from a time prior to appellee's entry into the field and that appellee's priority date therefore prevailed. Thus, the Board awarded priority to appellee and this appeal followed.
 
 
 7
 The issues before us are whether the Board erred in concluding that the performed tread strip language in the preamble limits the count and whether it erred in concluding that appellants' 1983 testing of a curing ring apparatus, which the Board concluded was a conception, was not also a reduction to practice.
 
 
 8
 The Board determined that the preformed tread strip language limited the count. It found "no merit to the position of [appellants] that the count is limited to a retreading curing ring alone." We disagree.
 
 
 9
 Construction of claim language is a question of law that we review de novo. Specialty Composites v. Cabot Corp., 845 F.2d 981, 986, 6 USPQ2d 1601, 1604 (Fed.Cir.1988). This court has stated that preamble language can constitute a claim limitation when it gives "life and meaning" to a claim. Corning Glass Works v. Sumitomo Elec. U.S.A., Inc, 868 F.2d 1251, 1257, 9 USPQ2d 1962, 1966 (Fed.Cir.1989). In other words, when it is part of the definition of the invention, it provides a limitation. Diversitech Corp. v. Century Steps, Inc., 850 F.2d 675, 678, 7 USPQ2d 1315, 1317 (Fed.Cir.1988). On the other hand, when the preamble states a purpose or intended use for the invention, it is not limiting. It merely indicates the environment in which the claimed invention operates. Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 868, 228 USPQ 90, 94 (Fed.Cir.1985).
 
 
 10
 We conclude that the performed tread strip language is the latter; it indicates the intended purpose and environment of the invention rather than constitutes a part of the definition of the invention. The very language itself of the interference count defines the invention. It recites a retread curing apparatus including a circular body member, guide means, and a plurality of clamps. The tire carcass, performed tread strip, and flexible envelope are merely the environment of the claimed invention, not limitations of the count. Thus, the tread strip is not a claim limitation.
 
 
 11
 Appellee himself concedes that the performed tread strip is not part of the subject matter of the count, but only part of the environment in which the invention is to be used. Thus, this issue is not even contested by appellee. We conclude that the Board erred in its determination that the performed tread strip preamble language limits the count and that appellants had to test their invention with a preformed tread strip.
 
 
 12
 The Board also concluded that the 1983 tests performed by appellants constituted a conception of the invention. However, it felt that these tests did not constitute a reduction to practice because they did not establish that the invention worked as intended in its practical contemplated use. It found that the tests did not involve the actual retreading of a tire and were not performed under normal temperature and pressure conditions. The Board concluded that the tests provided only "a mere basis for predicting that [appellants'] device would have successfully operated in its contemplated use."
 
 
 13
 Appellants argue that the Board did not apply the correct legal standard for determining whether an invention has been reduced to practice. They assert that tests which demonstrate that a device will "probably" work in its intended functional setting reduce an invention to practice and that their early 1983 tests sufficed. Appellee responds that appellants' claim of a reduction to practice is based on facts that were found by the Board and that this court can only disturb the Board's conclusions if it holds those findings to be clearly erroneous.
 
 
 14
 Adequacy of a reduction to practice is a question of law which this court reviews de novo. Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376, 231 USPQ 81, 87 (Fed.Cir.1986), cert. denied, 480 U.S. 947 (1987). For an actual reduction to practice to have occurred, testing must demonstrate that the invention will work for its intended purpose. King Instrument v. Otari Corp., 767 F.2d 853, 861, 226 USPQ 402, 407 (Fed.Cir.1985), cert. denied, 475 U.S. 1016 (1986). The purpose of this invention is to retread tires. The testimony showed that the testing that is critical in determining whether the invention would retread tires is that which was performed by appellants up to and including May 1983.
 
 
 15
 The Board found that in early 1983, appellants began working with metal rings to seal an envelope against the sides and beads of a tire. An employee of appellants, Robert Turner, testified that in April to May of 1983, he placed a curing ring with clamps on a tire to seal the envelope to determine if the rings would hold the seal. Turner testified, in answer to a question whether the ring held the seal, "Yes. It looked like it might have possibilities." A disinterested witness, Kenneth Simmons, who was found to be credible by the Board, testified that "the whole issue is the proper [vacuum] sealing of the envelope." One of appellee's employees, Henry Torrez, testified that once the ring held the seal, he was pretty confident that the apparatus would work. Maurice Anderson, another disinterested witness, testified that if the ring would hold a vacuum and seal, it would work for retreading. Appellee himself testified that if a vacuum seal remained over a certain length of time, then the apparatus was satisfactory for retreading.
 
 
 16
 Based on the above testimony, we conclude that the tests that were performed by appellants in May 1983 were sufficient to demonstrate that the invention would work for its intended purpose, and that one could retread a tire by using an inner curing ring to hold a vacuum seal on the tire. The testimony of knowledgeable parties that the tests in 1983 demonstrated that the invention would work in its intended environment is the best evidence on that question. It was not effectively rebutted. Thus, we are satisfied that appellants reduced the invention to practice prior to appellee's priority date.
 
 
 17
 We also conclude that the acts that the Board found sufficient to constitute conception, on the facts of this case, amounted to a reduction to practice. These acts were not merely evidence of a conception. Since they were sufficiently complete to include "a definite and permanent idea of the complete and operative invention," see Hybritech, 802 F.2d at 1376, 231 USPQ at 87, then, as acts which showed that the invention worked, they necessarily constituted a reduction to practice.
 
 
 18
 For the above reasons, we therefore reverse the decision of the Board.
 
 
 19
 Appellee has claimed that this is a frivolous appeal, that appellants are merely seeking to retry on appeal the same case it tried below. His brief faults this court for not attempting "to articulate any universally applicable standard." It claims that "Perhaps the best that can be said is that a frivolous or exceptional appeal is one that stands so little chance of success that the filing and prosecution of the appeal is an imposition on the taxpayers as well as on the opposing party and that the court knows a frivolous or exceptional appeal when it sees one."
 
 
 20
 We consider appellee's claim to be frivolous. That should be clear from the fact that we have reversed the Board. Moreover, appellee has provided no analysis concerning what is frivolous about appellants' appeal. To assert a claim of frivolousness against an opponent's case, without any explanation, merely calling one of his arguments "cockamamie," and suggesting that a frivolous appeal is one that the court "knows--when it sees one" is highly inappropriate.